Dear Senator Murray:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. You have asked for our office's opinion on several questions related to performance-based energy efficiency contracts. Some of the questions appear to call for factual determinations, or otherwise do not present legal questions. As a general rule, the Attorney General's Office refrains from conducting factual determinations. We have attempted to address each legal question presented.
 Question #1: In order to meet the statutory requirements of a performance-based energy efficiency contract, must the actual savings in each and every year of the contract be sufficient to allow for the repayment of the annual financial obligation undertaken in the contract?
At the outset we note that your opinion request makes reference to Attorney General Opinion No. 10-0138. There, we recognized that the law pertaining to performance-based energy efficiency contracts has undergone several revisions over the years. Further, there are two (2) separate statutory schemes governing performance-based energy contracts, one directed to state agencies and the other directed to local political subdivisions. The response and opinion stated in Attorney General Opinion No. 10-0138 concerned certain performance-based energy contracts that contained "stipulated savings" clauses. The response was based upon the law applicable to such contracts at the time they were executed.
Turning attention now to your first question, La.Rev.Stat. 33:4547.1 (B)(1) currently defines a performance-based energy efficiency contract as a contract for energy efficiency services and equipment in which the payment obligation for each year of the contract is either: *Page 2 
 "(a) Set as a percentage of the annual energy cost savings attributable to the services or equipment under the contract; or
 (b) Guaranteed by the person under contract to be less than the annual energy cost savings attributable to the services or equipment under the contract."
Thus, pursuant to statute, in order to be a valid performance-based energy efficiency contract, the payment obligation for each year of the contract must be either a percentage of the annual energy cost savings attributable to the services or equipment under the contract, or guaranteed to be less than the annual energy cost savings attributable to the services or equipment under the contract. Both options contemplate and assume annual energy cost savings.
La.Rev.Stat. 33:4547.1 subsection (F) (1) further provides that "[t]he guarantee of energy savings shall, at a minimum, ensure a total annual savings sufficient to fully fund any financing arrangement entered into to fund the contract," while La.Rev.Stat. 33:4547.1 subsection (F)(2)(g) mandates that "[a]ll savings shall be guaranteed and measured on an annual basis."
Following the specific language found in the statute, it is our opinion that the annual energy cost savings in each year of the contract must be sufficient to allow for the repayment of the corresponding annual financial/payment obligation undertaken in the contract in order to be considered a valid performance-based energy efficiency contract executed pursuant to the provisions of La.Rev.Stat. 33:4547.1.
 Question #2: If some of the savings contained in the contract are stipulated, meaning they are really merely projections/assumptions, that are made at the time the contract is entered into and without any consideration at that time for measurement and verification, can the contract be considered an energy efficiency contract under the law?
As recognized in Attorney General Opinion No. 10-0138, our review of La.Rev.Stat. 33:4547.1 failed to reveal any per se prohibition against stipulated savings. In Attorney General Opinion No. 10-0138, we were asked, among other things, whether "stipulated energy and/or operational and maintenance savings are permitted in a performance-based energy efficiency contract if the stipulations are based upon pre-contractual measurements of historical equipment, operations and maintenance information of a public entity."
In our response, we stated:
 . . . it is our opinion that in order to be a valid performance-based energy efficiency contract, pursuant to statute, the annual energy *Page 3 
cost savings must be "guaranteed." As stated in Opinion No. 07-0002, we can find no prohibition against having stipulated savings. As such, we do not see any prohibition against basing any stipulated savings upon pre-contractual measurements of historical equipment, operations, and maintenance information of a public entity.
 However, as stated in Attorney General Opinion No. 07-0002, any stipulated savings provision must be subject to some type of contractual measurement and verification on a recurring basis. Further, we believe the contract must contain some sort of a mechanism to require a reimbursement for any deficiency and/or default. At the time Attorney General Opinion Nos. 98-280 and 07-0002 were issued, the applicable law was silent on the prescribed method of measurement and verification. As such, the parties to these performance-based energy efficiency contracts were free to devise their own mutually acceptable method of measurement and verification.
Thus, at the time the contracts at issue in Attorney General Opinion Nos. 07-0002 and 10-0138 were executed, the law was silent on the prescribed method of measurement and verification. As such, we opined that the use of stipulated savings clauses was not prohibited and the parties to such contracts were free to agree on a mutually acceptable method of measuring and verifying savings. Nevertheless, we also opined that for such contracts, all savings must be guaranteed. Thus, in essence, such stipulated savings are really estimated savings. In all instances, savings must be subject to some type of contractual measurement and verification on a recurring annual basis as provided for by the law applicable at the time such contracts were executed. Further, all contracts must contain some sort of a mechanism to require a reimbursement for any deficiency and/or default.
 Question #3: As we agree that the term stipulated savings is not defined anywhere in Louisiana Statute, how would one go about measuring and verifying those savings at a later date? Would you agree that stipulated savings is a term provided by the contractor and not the public state agency or political subdivision and as such has no meaning under Louisiana Law? Am I correct in my interpretation of your opinion 10-0138 that the omission of these predetermined savings assumptions, i.e., stipulated savings, are allowable if both parties to the contract agree to them although they are counter to law?
In its current form, La.Rev.Stat. 33:4547.1 provides that "energy efficiency," i.e. savings may be measured and verified under the International Performance *Page 4 
Measurement and Verification Protocol as it existed on January 1, 2006, or subsequently amended verification protocols or alternative protocols and verification standards and methodologies acceptable to political subdivisions.
Our review of Louisiana Revised Statutes, Title 33, Chapter 10-C, "Performance Based Energy Efficiency Contracts" fails to reveal a definition of the term stipulated savings. Our office is not in a position to determine who provided the term.
 Question #4: Do you agree that these Performance-Based Energy Efficiency Contracts, both for state agencies and for political subdivisions of the state, are exceptions to the Public Bid law? As such, do you agree that any noncompliance with the letter of the Public Bid law should be considered a violation of the Public Bid Law?
La.Rev.Stat. 33:4547.1 provides that a performance-based energy efficiency contract is considered a contract for services and shall be exempt from the provisions of La.Rev.Stat. 38:2212. Thus, pursuant to La.Rev.Stat. 33:4547.1 and the applicable jurisprudence, it is our opinion that performance-based energy efficiency contracts are exempt from the provisions of Louisiana's Public Bid Law. Any contract that fails to meet the statutory definition of a performance-based energy efficiency contract as defined by La.Rev.Stat. 33:4547.1 can not take advantage of the exemption contained in La.Rev.Stat. 33:4547.1. Pursuant to La.Rev.Stat. 38:2220 any contract entered into contrary to the provisions of the Louisiana Public Bid Law shall be null and void.
 Question #5: If the contracting parties are allowed to "stipulate" that sufficient savings will be generated to avoid the public bid law, are we not inviting potential wasteful spending of taxpayer money and potential fraud and abuse? If the savings are not real and subsequently are not sufficient to meet the ANNUAL financial obligation of the contract and cannot be proven as such, why not publicly bid the project?
We are unable to respond to this question as it does not present a legal issue/question.
 Question #6: Once the contracting parties "stipulate" on the amount of the savings, do you agree that the savings have been established by contract, regardless of whether or not the savings are real, verifiable or measurable?
No. It is our opinion that in order to be a valid performance-based energy efficiency contract, all savings must be guaranteed and must be subject to some type of measurement and verification on a recurring basis. Further, pursuant to *Page 5 
La.Rev.Stat. 33:4547.1 in its current form, stipulated savings may be measured and verified under the International Performance Measurement and Verification Protocol as it existed on January 1, 2006, or subsequently amended verification protocols or alternative protocols and verification standards and methodologies acceptable to political subdivisions.
 Question #7: What is the justification or rationale for stipulating savings at the onset of the contract if one or both parties to the contract subsequently assert that these stipulated savings were real, verifiable and measurable? Why stipulate those savings in the contract if you could prove they were real in the first place? Why not refer to them as energy savings or operational savings or maintenance savings? And, at the end of the year, are they of sufficiency that they meet the financial obligation of the contract EACH AND EVERY YEAR OF THE CONTRACT?
We are unable to respond to this question as it does not present a legal issue/question.
 Question #8: Do you agree that just because savings have the ability to be measured and verified, they may not be sufficient to satisfy the payment of the indebtedness each and every year of the contract? Do you also agree that the only way to verify that the savings were sufficient is to measure them at the end of the year?
We are unable to respond to this question as it does not present a legal issue/question.
 Question #9: Wouldn't a contract constructed as an Energy Efficiency contract with a stipulated savings clause that is excessive ALWAYS allow for the avoidance of the Public Bid Law? In other words, if the parties STIPULATE at the commencement of the contract that the savings will be more than adequate to meet the financial obligations of the contract, will the Public Bid Law EVER be utilized for these types of projects? I think not! Will just a guarantee from the contractor be sufficient as opposed to using an open, competitive process?
Please see answer to Question #6. *Page 6 
 Question #10: Are stipulated savings clauses in Performance Based Energy Efficiency contracts a violation of the Public Bid Law? If not, what basis is provided under law to allow for these predetermined savings? Is the silence of the law on stipulated savings adequate to allow them?
It is our opinion that the mere inclusion of a stipulated savings clause in a performance-based energy efficiency contract does not in and of itself create a public bid law violation. For a performance-based energy efficiency contract to be valid, all savings, stipulated or otherwise, must be guaranteed and must be subject to some type of contractual measurement and verification on a recurring annual basis.
 Question #11: Is the Attorney General convinced that amending a contract that is a violation of the State Public Bid Law is in the best interest of the taxpayers and is good public policy?
We are unable to respond to this question as it does not present a legal issue/question.
 Question #12: Is the opinion of the Attorney General such that the contractor is the best party to go in and renegotiate these illegal contracts to make them adhere to the law? If you agree, what process is in place to do that?
We are unable to respond to this question as it does not present a legal issue/question.
 Question #13: Is the Attorney General responsible for enforcing the Public Bid Law in Louisiana? If so, can the Attorney General step in and do that for political subdivisions of the state where the local District Attorney chooses not to do it?
La.Rev.Stat. 38:2220 provides that "[t]he district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract . . ., or through ordinary proceeding to seek appropriate remedy to nullify a contract . . ." Thus, pursuant to statute, either the local District Attorney, the Attorney General, or any interested party may file suit to prevent the award of a contract if it would violate the provisions of Louisiana's Public Bid Law. *Page 7 
Further, La.Rev.Stat. 38:2220.1 authorizes private citizens and other entities to institute a civil action against public entities to deter the construction of public works or the purchase of materials and supplies in violation of the provisions of Louisiana's Public Bid Law. Still further, pursuant to La.Rev.Stat. 38:2220.2, any person with direct knowledge of an alleged violation by a public entity of the provisions of Louisiana's Public Bid Law may institute a civil action in district court against the public entity to seek a declaration that such violation has occurred.
 Question #14: How would a state agency or political subdivision go back some number of years and determine in each one of those years there were sufficient real savings?
We are unable to respond to this question as it does not present a legal issue/question.
We hope this response adequately addresses your questions and concerns. If our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 Attorney General
 BY: __________________________
 MICHAEL J VALLAN
 Assistant Attorney General
 JDC/MJV/chb